UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARYLE O.,

                           Plaintiff,

                v.

KILOLO KIJAKAZI,[1] Acting Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION
and
ORDER**

**20-CV-462F**
(**consent**)

APPEARANCES:       LAW OFFICES OF KENNETH R. HILLER
                          Attorneys for Plaintiff
                          KENNETH R. HILLER, and
                          AMY C. CHAMBERS, of Counsel
                          6000 North Bailey Avenue
                          Suite 1A
                          Amherst, New York  14226

                          JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                              and
                          EMILY MAXINE FISHMAN
                          Special Assistant United States Attorney, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          26 Federal Plaza
                          Room 3904
                          New York, New York  10278

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 6, 2021, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 21).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 12, 2021 (Dkt. 17), and by Defendant on March 1, 2021 (Dkt. 19).

## BACKGROUND

Plaintiff Daryle O. ("Plaintiff"), brings this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on December 9, 2015, for Social Security Disability Insurance ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges he became disabled on October 16, 2015, based on a brain aneurysm, fluid on his brain, memory loss and a drain stent in his head.  AR[2] at 184, 204, 205.  Plaintiff's application initially was denied on September 13, 2016, AR at 92-97, and at Plaintiff's timely request, AR at 100-01, on November 14, 2018, a hearing was held in Buffalo, New York with administrative law judge ("ALJ") Mary Sparks ("the ALJ"), presiding via video-conference from Albany, New York.  AR at 35-62 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, represented by Jeanne Murray, Esq., and vocational expert Margaret Heck ("the VE").

On March 8, 2019, the ALJ denied Plaintiff's claim, AR at 13-34 ("ALJ's decision"), and Plaintiff timely filed a request for review of the ALJ's decision by the Appeals Council, AR at 181-83.  Additional medical records were submitted to the

---

[2] References to "AR" are to the page numbers of the Administrative Record Defendant electronically filed in two parts on November 13, 2020 (Dkts. 14 and 15).

Appeals Council for consideration, AR at 8-12, but on February 18, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR at 1-7, thereby rendering the ALJ's decision the Commissioner's final determination on the claim.  In denying to review the ALJ's decision, the Appeals Council explained that none of Plaintiff's newly submitted medical evidence was considered either because it was not likely to change the outcome of the ALJ's decision or because the evidence did not relate to the period at issue and thus would not affect the determination of whether Plaintiff was disabled.  On April 20, 2020, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On November 30, 2020, Plaintiff moved for judgment on the pleadings (Dkt. 17 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 17-1) ("Plaintiff's Memorandum").  On March 1, 2021, Defendant moved for judgment on the pleadings (Dkt. 19) ("Defendant's Motion"), attaching Commissioner's Memorandum in Support of His Motion for Judgment on the Pleadings and in Response to Plaintiff's Memorandum Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 19-1) ("Defendant's Memorandum").  Filed on March 22, 2021 was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgement on the Pleadings (Dkt. 20) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.  The Clerk of Court is directed to close the file.

**FACTS**[3]

Plaintiff Daryle O. ("Plaintiff"), born January 24, 1971, was 45 years old when he initially applied for disability benefits on December 9, 2016, and 48 years old as of March 8, 2019, the date of the ALJ's decision.  AR at 30, 39, 184, 201, 203.  Plaintiff lived with his wife and two daughters in a house.  AR at 43, 221.  Plaintiff graduated high school where he attended regular classes, and has not completed any specialized job training, trade or vocational school.  AR at 205.  Plaintiff has a driver's license but is medically restricted from driving.  AR at 43.  Plaintiff's past relevant work includes more than 20 years as a precision optical equipment supervisor and as an optical technician. AR at 206.

It is undisputed that on October 16, 2015, after experiencing a headache with progressive confusion for seven days, Plaintiff was admitted to Buffalo General Medical Center ("BGMC"), in Buffalo, New York where medical imaging, including magnetic resonance angiography ("MRA"), showed Plaintiff had a ruptured anterior communicating artery ("ACA") aneurysm with multiple small evolving infarcts (areas of dead tissue from loss of blood supply), subarachnoid hemorrhage and hydrocephalus. AR at 453-58.  From October 6, 2015 to August 30, 2018, Plaintiff was treated for his aneurysm at University of Buffalo Neurosurgery ("UBNS") where Adnan Siddiqui, M.D. ("Dr. Siddiqui") was his treating physician and Plaintiff also saw physician's assistant Emily Hennessy, PA-C ("PA Hennesy").  Treatment of the aneurysm included several surgical procedures over a period of months including balloon-assisted coiling of the aneurysm performed by Dr. Siddiqui on October 18, 2015, AR at 453-56, and placement

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

of a shunt to drain excess fluid from the brain performed by neurosurgeon Jody Leonardo, M.D. ("Dr. Leonardo") on December 12, 2015.  AR at 344-45.  Further MRA on February 23, 2017 showed fluid continued to flow from the aneurysm, AR at 1028-31, for which Plaintiff underwent surgical craniotomy for clipping of the aneurysm performed by Dr. Siddiqui on July 31, 2017.  AR at 1023-27.

In connection with his disability benefits application, Plaintiff underwent a psychiatric consultative examination by psychologist Evelyn Smigelsky, Ph.D. ("Dr. Smigelsky") on June 30, 2016, AR at 350-57, and a consultative neurological evaluation by David Brauer, M.D. ("Dr. Brauer"), on July 14, 2016, AR at 358-61.  On August 5, 2016, state agency review psychologist Mark Berkowitz, Psy.D. ("Dr. Berkowitz"), completed a review of Plaintiff's medical records and determined Plaintiff was not disabled.  AR at 63-75, 88-89.  On August 25, 2016, medical consultant Martin Rubinowitz, M.D. ("Dr. Rubinowitz"), completed a Physical Residual Functional Capacity Assessment on behalf of the state agency.  AR at 70-72.

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59.

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

2.      **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting his mental or physical ability to perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal a listing in 20 C.F.R. Part 404, Subpt. P, Appendix 1 of the regulations, and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite his collective impairments, retains the "residual functional capacity ("RFC") to perform his past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform his PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The claimant bears the burden of proof for the first four steps of the sequential analysis, with the Commissioner bearing the burden of proof on the final step.  20

C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through June 30, 2017, AR at 18, Plaintiff has not engaged in SGA from October 16, 2015, his alleged disability onset date ("DOD") through June 30, 2017, Plaintiff's date last insured ("DLI"), *id*., and has the severe impairments of status post trans-nasal endoscopic repair of anterior cranial fossa defect, state post repair sinus defect, state post craniotomy for intracranial skull base defect, status post redo craniotomy, status post cranioplasty with implantation of 3-D custom-made implant, status post subarachnoid hemorrhage and ACA aneurysm coil in 2015, aneurysm clipping in 2017, hydrocephalus status post VPS placement and shunt ligation followed by repair of skull base defect, status post valve replacement with programmable Medtronic strata valve 11-17, and headaches, AR at 18, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal in severity to a listed impairment.  AR at 18-21.  The ALJ further found that despite his impairments, Plaintiff retains the RFC for sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff can perform no more than occasional pushing or pulling with upper extremities and no more than occasionally operate foot controls with the lower extremities, can never climb ropes, ladders, or scaffolds, can occasionally climb ramps

or stairs, occasionally stoop, crouch, kneel or crawl, can have no more than occasional exposure to dangerous moving machinery and unprotected heights, and is limited to performing simple, repetitive jobs defined as those having no more than 1 to 2 tasks as that is defined by the U.S. Department of Labor employment and training administration in the revised handbook for analyzing jobs. AR at 21-28. Plaintiff was unable to perform any PRW, AR at 28, but given his age, education, ability to communicate in English, and despite a lack of transferable skills, is able to perform jobs existing in the national economy including as a document preparer, ticket checker, and surveillance system monitor. AR at 28-29. As such, the ALJ found Plaintiff was not disabled as defined under the Act at any time through Plaintiff's DLI. *Id*. at 30.

In support of his motion, Plaintiff argues the ALJ erred at step three of the five-step sequential analysis by improperly relying on stale medical opinions of record, failing to further develop the record, and improperly relying on her own lay opinion to interpret complex bare medical findings in formulating Plaintiff's RFC, Plaintiff's Memorandum at 16-24, and the Appeals Council erred in failing to consider the evidence Plaintiff newly submitted on appeal. AR at 24-30. In opposition, Defendant argues substantial evidence supports the ALJ's RFC determination, Defendant's Memorandum at 14-15, Plaintiff failed to meet his burden to prove he became disabled prior to his DLI, *i.e.*, June 30, 2017, *id*. at 16-21, the medical opinions rendered in July and August of 2016 were not stale as of Plaintiff's DLI, *id*. at 21-22, Plaintiff's medical records newly submitted to the Appeals Council were properly discounted because they did not relate to the relevant time period, were cumulative of other evidence in the record, and opined on a determination that is reserved to the Commissioner, *id*. at 22-

28.  In reply, Plaintiff reiterates his arguments that the ALJ erred at step three, Plaintiff's Reply at 1-6, and argues that insofar as the Appeals Council disallowed Plaintiff's newly submitted evidence because it did not related to the relevant period of time, the evidence is relevant because it demonstrates the ALJ improperly concluded that certain aspects of Plaintiff's impairment were temporary.  *Id.* at 6-9.  There is no merit to Plaintiff's arguments.

Preliminarily, the court observes that because Plaintiff only applied for disability benefits pursuant to Title II, Plaintiff must establish he was disabled prior to the expiration of his insured status, or DLI, here, June 30, 2017.  42 U.S.C. §§ 416(i)(2)(A), (D), and (E), 423(a)(1)(A); 20 C.F.R. §§ 404.131, 404.315; *see Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989) (requiring claimant establish disability lasting at least 12 months commencing prior to his DLI for disability benefits under Title II).  Evidence that an impairment reached disabling severity after the expiration of a claimant's insured status, or was exacerbated after the DLI, will not support a disability determination under Title II, even if the same impairment existed, albeit at a less severe level, prior to the DLI.  *Arnone*, 882 F.2d at 37-38.  As discussed below, much of the medical evidence in the record was generated after June 30, 2017 and, thus, is not relevant to whether Plaintiff became prior to his DLI.[5]

With regard to Plaintiff's argument that the ALJ improperly relied on stale medical opinions of record, Plaintiff maintains the ALJ's reliance on the opinions of Dr. Smiglesky, Dr. Brauer, and Dr. Berkowitz, respectively rendered on June 30, 2016, July

---

[5] Although for purposes of Supplemental Security Income disability benefits under Title XVI ("SSI"), Plaintiff would be entitled to an award of benefits if substantial evidence in the record establishes he was disabled as of the date of the ALJ's decision, *i.e.*, March 8, 2019, 20 C.F.R. § 416.330, because Plaintiff did not apply for SSI, the court expresses no opinion on the matter.

14, 2016, and August 5, 2016 ("the 2016 medical opinions"), was improper because
such decisions were stale in light of "later complex objective medical findings" showing
"Plaintiff suffered from multiple chronic and progressive conditions that required
extensive treatment including surgeries and hospitalizations."  Plaintiff's Memorandum
at 17-19.  According to Plaintiff, because later medical evidence establishes significant
changes to Plaintiff's medical history, the ALJ's reliance on the 2016 medical opinions
was error.  *Id*.  As Defendant argues, however, Defendant's Memorandum at 21-22, the
receipt of later medical evidence and treatment records does not render earlier opinions
stale.  *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 n. 4 (2d Cir. 2016) (noting no
caselaw or regulation "imposes an unqualified rule that a medical opinion is superseded
by additional material in the record," such that doubts are raised about the reliability of
the medical opinion).  Nor is there any legal basis for concluding that the 2016 medical
opinions were "stale" as of June 30, 2017, Plaintiff's DLI.  *Id*.  Further, with regard to
Plaintiff's assertion that the three medical opinions fail to account for Plaintiff's later
diagnosis of parkinsonism[6] which diagnosis indicates Plaintiff's condition relative to his
aneurysm continued to progress and never improved to the point Plaintiff was able to
resume working, Plaintiff's Reply at 7-8, Plaintiff's medical record establishes that

---

[6] "Parkinsonism is any condition that causes a combination of the movement abnormalities seen in
Parkinson's disease – such as tremor, slow movement, impaired speech or muscle stiffness – especially
resulting from the loss of dopamine-containing nerve cells (neurons)."  *Parkinsonism: Causes and coping
strategies*, available at https://www.mayoclinic.org/diseases-conditions/parkinsons-disease/expert-
answers/parkinsonism/faq-20058490 (last visited July 21, 2021).  *See also Parkinson's vs. Parkinsonism*,
available at https://davisphinneyfoundation.org/parkinsons-vs-parkinsonism/ (last visited July 21, 2021)
(describing parkinsonism as "the umbrella term used to describe a group of neurological problems"
including Parkinson's, which is "a progressive neurogenerative disease, which means it will worsen over
time and is believed to be caused by the dysfunction of the nerve cells in the brain," and "is caused
mainly by the degeneration of nerve cells in the brain, while the causes of parkinsonism are numerous,
ranging from the side effects of medications to chronic head traumas to metabolic diseases to toxins to
neurological diseases").

Plaintiff did not complain of the neurological symptoms that lead to his parkinsonism diagnosis, including right side paresthesia and related gait issues, until Plaintiff was admitted to BGMC with complaints of right-sided paresthesias and examined by Dr. Siddiqui on April 16, 2018, when Dr. Siddiqui specifically reported that Plaintiff "states that initially he was doing very well postoperatively until 3-4 days ago when he started developing some numbness in the right arm which has since progressed to include the right face and the right leg," with Plaintiff describing the numbness in his face as "feeling like novocaine" and which was affecting Plaintiff's speech.  AR at 1660.  That Plaintiff newly reported such symptoms in April 2018 is corroborated by other evidence in the record, including a June 8, 2018 BGMC EEG & Clinical Neurophysiology Report describing Plaintiff's history as including "new onset of right sided numbness for the past few months," AR at 1956, a June 15, 2018 consultation with rehabilitation specialist Jill Schleifer-Schneggenburger, M.D. ("Dr. Schleifer-Schneggenburger") who recorded that Plaintiff "says the paresthesias in his right hand and leg have not changed since their onset in April 2018"), AR at 1941; and a June 14, 2018 report of examination by neurologist Michael Battaglia, D.O. ("Dr. Battaglia") who reported to Plaintiff's primary care physician ("PCP") Jamie Streicher, D.O. ("Dr. Streicher"), that "[i]n early April of this year [Plaintiff] developed tingling involving first to the lower jaw, and the fingers, then primarily the right upper leg. . . .  There has also been some right-sided weakness that seems to have started about the same time as the paresthesias."  AR at 1972-73. Although the right-side paresthesias symptoms Plaintiff first experienced in April 2018 were diagnosed as parkinsonism by Dr. Battaglia on August 9, 2018 and described as secondary to hypoxia (low blood oxygen) from his previous cerebral aneurysm, AR at

1537-38, such diagnosis is irrelevant to the fact that in June, July and August, 2016, three medical professionals rendered opinions consistent with the RFC assessed by the ALJ and that did not find Plaintiff complained of parkinsonism symptoms prior to April 2018, which was almost two years after Plaintiff's DLI of June 30, 2017.

Accordingly, Plaintiff's argument that the 2016 medical opinions were so stale that the ALJ's reliance on them was in error is without merit.

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 16-24, that the ALJ improperly relied on her own lay opinion to interpret complex bare medical findings in formulating Plaintiff's RFC; rather, as Defendant asserts, Defendant's Memorandum at 14-25, each aspect of Plaintiff's RFC as determined by the ALJ is supported by substantial evidence in the record, including consultative opinions based both on examinations and the review of Plaintiff's medical records.  *See Camille*, 652 Fed.Appx. at 28 (consultative physician's report may constitute substantial evidence).

In particular, the ALJ found that Plaintiff retains the RFC for sedentary work as defined in 20 C.F.R. § 404.1567(a) as involving

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

As relevant, in the Physical Residual Functional Capacity Assessment completed on August 25, 2016, State agency consultant Dr. Rubinowitz assessed Plaintiff with the ability to frequently lift and carry up to 10 lbs., and occasionally lift and carry up to 20 lbs., AR at 70-72, yet the ALJ afforded Dr. Rubinowitz's opinion limited weight because of other evidence in the record that Plaintiff was, at times following his aneurism

surgeries, limited to lifting and carrying no more than 5 lbs., AR at 1025 (August 2, 2017); 1065 (September 1, 2017), and 507 (November 15, 2017), such restrictions were imposed after Plaintiff's DLI of June 30, 2017.  Further, on July 14, 2016, *i.e.*, during the period of time relevant to Plaintiff's disability benefits claim under Title II, Dr. Brauer found Plaintiff with only mild to moderate restrictions to lifting and carrying.  AR at 361.  Accordingly, this aspect of the ALJ's determination of Plaintiff's RFC prior to June 30, 2017 is not based on the ALJ's lay opinion but is supported by substantial evidence in the record.

The ALJ's limiting Plaintiff to no more than occasional pushing or pulling with upper extremities and no more than occasionally operating foot controls is supported by Dr. Rubinowitz's August 25, 2016 opinion that Plaintiff is limited to pushing and pulling with his upper and lower extremities, AR at 70-71, as well as Dr. Brauer's opinion that Plaintiff has mild to moderate limitations to pushing and pulling.[7]  AR at 361.  The determinations that Plaintiff can never climb ropes, ladders, or scaffolds, can occasionally climb ramps or stairs, and occasionally stoop, crouch, kneel or crawl are supported by Dr. Brauer's opinion that Plaintiff is mildly to moderately limited with regard to such activities.  AR at 361.  Furthermore, Dr. Brauer's finding that Plaintiff has balance issues and mild to moderate limitations to working at unrestricted heights, AR at 361, supports the ALJ's determination that Plaintiff is limited to occasional exposure to machinery or unprotected heights.  Accordingly, there is no merit to Plaintiff's

---

[7] The court notes a "moderate" restriction corresponds to an "occasional" ability to engage in a particular physical activity.  *See Faeth v. Comm'r of Soc. Sec.*, 2020 WL 5792975, at * 4 (W.D.N.Y. Sept. 29, 2020) (citing cases where "moderate" corresponded to an "occasional" ability to engage in the activity).  *See also* Social Security Ruling 83-10 (defining "occasional" as "occurring . . . up to one-third of the time").

argument that the ALJ relied on her own lay opinion in formulating Plaintiff's RFC as of June 30, 2017, Plaintiff's DLI.

Because the medical opinions the ALJ considered were not stale with regard to Plaintiff's need to establish disability by his DLI of June 30, 2017, and the ALJ did not impermissibly rely on her own lay opinion in formulating Plaintiff's RFC, there also is no merit to Plaintiff's argument, Plaintiff's Memorandum at 22-24, that the ALJ failed to develop the record.  Significantly, although evidence in the record suggests that after Plaintiff's DLI, Plaintiff experienced new symptoms that may have rendered Plaintiff disabled after June 30, 2017, the record is simply devoid of such evidence establishing disability prior to the statutory insured deadline under Title II.  In particular, Plaintiff repeatedly reported doing well after undergoing the first two surgeries to treat his aneurisms, including on October 18, 2015, AR at 453-56, and December 12, 2015, AR at 344-45, as well as at a February 9, 2016 neurological follow-up at UBNS by Kevin Cuddahee, FNP, NP-BC ("NP Cuddahee"), documenting both Plaintiff and Plaintiff's wife reported Plaintiff was "doing remarkably well," with no headaches, nausea, vomiting, blurred or double vision, seizure, syncopal (fainting) episodes, or weakness in his upper or lower extremities, AR at 1725, and NP Cuddahee planned for Plaintiff to return for further follow-up in four to six months.  AR at 1726.  On June 9, 2016, Plaintiff attended his next follow-up appointment at UBNS with NP Cuddahee reporting both Plaintiff and Plaintiff's wife reported Plaintiff "continues to do quite well" and was without headaches, nausea, vomiting, blurred or double vision, seizure or syncopal episodes and that Plaintiff "overall is doing quite well clinically."  AR at 1727.  NP Cuddahee reviewed a CT scan Plaintiff underwent earlier on June 9, 2016, which showed the

surgically implanted shunt was stable and with no evidence of hydrocephalus.  *Id*. at

1727-28.  Plaintiff's next follow-up examination with UBNS was on March 24, 2017

when PA Hennessy reported Plaintiff "offers no complaints such as headache, double

vision, loss of vision, difficulty with speech, weakness, sensory loss or gait instability."

AR at 1717.  Physical examination was unremarkable, although PA Hennessy's review

of Plaintiff's most recent MRA scan on February 23, 2017 showed "a slight increase in

the amount of filling" suggesting "continued flow to the base of his ACOM aneurysm,"

and Plaintiff was to meet with Dr. Siddiqui to "discuss the potential treatment of his

residual aneurysm."  AR at 1717.  On June 2, 2017, Plaintiff consulted with Dr. Siddiqui

who recommended Plaintiff undergo surgical clipping of the aneurysm and Plaintiff

agreed.  AR at 1028-29.  Plaintiff underwent the surgical clipping procedure on July 31,

2017, following which Dr. Siddiqui reported on August 18, 2017 that Plaintiff complained

of severe headaches, but was "neurologically intact otherwise."  AR at 1835-36.  The

headaches were attributed to a defect in the shunt that was admitting air for which

Plaintiff underwent additional surgical procedures for shunt repair on August 19, 2017,

AR at 1777-78, and for shunt valve replacement on November 15, 2017.  AR at 1783-

84.  At Plaintiff's first post-operative examination on December 11, 2017, NP Hennessy

reported Plaintiff's headaches were improved and Plaintiff denied "any other new or

concerning neurological symptoms."  AR at 1715.  Plaintiff's physical examination was

unremarkable and Plaintiff ambulated with a normal gait and station, *id*., although a

December 11, 2017 CT scan showed increased pneumocephalus (presence of air

within the cranial cavity).  AR at 1716.  Additional CT scans over the next two months

including on January 18, 2018, and February 22, 2018, showed no significant changes

on pneumocephaly, and Plaintiff remained "neurologically intact," and "clinically completely asymptomatic," and the medical plan was to continue to surveille Plaintiff with additional CT scans.  AR at 1839-40, 1841-42.  Moreover, Plaintiff's parkinsonism symptoms did not manifest until April 2018.  AR at 1660-62.  Accordingly, Plaintiff's largely unremarkable medical findings prior to June 30, 2017, Plaintiff's DLI, establishes the ALJ did not err in failing to seek additional evidence to further develop the record.

Furthermore, there is no merit to Plaintiff's argument, Plaintiff's Memorandum at 24-30, that the Appeals Council erred in failing to consider the evidence Plaintiff newly submitted on appeal.  In particular, Plaintiff submitted to the Appeals Council the May 9, 2019 letter report from UBNS PA Hennessy to Dr. Streicher, Plaintiff's PCP, AR at 10-11 ("PA Hennessy Report"), and the May 30, 2019 opinion of Dr. Streicher, AR at 12 ("Dr. Streicher's Opinion").  PA Hennessy essentially reviewed Plaintiff's cerebral aneurysm history and treatment, including that Plaintiff has

> a complicated neurosurgical history including a subarachnoid hemorrhage followed by coiling of an ACOM aneurysm with recurrence of his aneurysm that required craniotomy and clipping.  His craniotomy was complicated by a persistent CSF leak requiring multiple repairs by Dr. Siddiqui and Dr. Diaz-Ordaz. He has also got shunt dependent hydrocephalus and recently diagnosed Parkinson's disease for which he is on Carbidopa.

AR at 10.

Despite describing as of May 9, 2019, Plaintiff's neurosurgical re-evaluation as essentially normal except for "some increased spasticity along the right side of his body and ambulates with an antalgic gait favoring his right side," AR at 10, PA Hennessy acknowledges that Plaintiff was recently denied disability benefits, stating "[i]n our professional opinion, we do not believe that [Plaintiff] can return to the workforce in any meaningful capacity.  Not only is he a survivor of a subarachnoid hemorrhage but also

has shunt dependent hydrocephalus and Parkinson's disease.  We are recommending that he is 100% permanently disabled."  *Id*. at 11.  Significantly, PA Hennessy's Report is followed by Dr. Streicher's Opinion with Dr. Streicher explaining that Plaintiff became a patient after Plaintiff's subarachnoid hemorrhage caused by a ruptured aneurysm, that since the ensuing surgeries, Plaintiff "has had cognitive difficulties" and "developed vocal cord palsy, repeated sinus infections, meningitis, and a CSF leak" and was recently diagnosed with Parkinson's.  *Id*.  Dr. Streicher concludes that "[w]ith patient's multiple medical problems, I do not feet that he is capable of working."  *Id*.

The Appeals Council decision not to admit these medical reports into evidence is not erroneous for several reasons.  First, PA Hennessy's recitation of the history of Plaintiff's cerebral aneurysm is cumulative of the record as a whole, adding nothing new such that consideration of PA Hennessy's Report would not change the outcome of the Appeals Council's review of the ALJ's decision.  Second, both PA Hennessy's Report and Dr. Streicher's Opinion do not pertain to the period prior to Plaintiff's DLI and, as such, are irrelevant to whether Plaintiff was disabled as of June 30, 2017, as required for disability benefits under Title II.  Third, insofar as PA Hennessy and Dr. Streicher opine as to Plaintiff's ability to work, such finding is solely for the Commissioner.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (stating the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'") (quoting 20 C.F.R. § 404.1527(e)(1)).  It therefore was not error for the Appeals Council to fail to include either report in the administrative record.

Accordingly, the ALJ's finding that Plaintiff was not disabled for a continuous 12-month period commencing between October 16, 2015, his alleged DOD, and June 30, 2017, his date last insured, is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 17) is DENIED; Defendant's Motion (Dkt. 19) is GRANTED.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        July 21st, 2021
                    Buffalo, New York